RECEIVED
NOV 19 2014
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

a

JOSHUA LATHERS
LA. DOC. #425088

DOCKET NO. 14-CV-718; SEC. P

VERSUS

JUDGE DEE D. DRELL

JAMES LEBLANC, ET AL.

MAGISTRATE JUDGE JAMES D. KIRK

REPORT AND RECOMMENDATION

Pro se Plaintiff, Joshua Lathers, proceeding in forma pauperis, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on April 2, 2014. Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections ("LDOC"), and he is incarcerated at the Winn Correctional Center ("WNC") in Winnfield, Louisiana. He complains that he was attacked by another inmate due to inadequate security and training of officers. He names as defendants Secretary of the Department of Corrections James Leblanc, Warden Tim Keith, Chief of Security Virgil Lucas, Captain Maxwell, Officer Henry, Assistant Prince, and Officer Anderson. Plaintiff seeks compensatory damages as well a court ordered investigation into the staffing and training of officers at WNC.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court.

***Factual Allegations***

On September 6, 2012, Plaintiff was approached by inmate

Davonta Mitchell, and a verbal argument ensued. Both inmates returned to their dorms without further incident. Later that evening, however, when Plaintiff was called out for the reading library, he was approached by Inmate Mitchell again, who made physical threats against Plaintiff. Plaintiff left his housing unit and "waited outside the doors for inmate Mitchell to pass" because he was afraid that Mitchell would attack him from behind if Plaintiff proceeded. When Mitchell exited the building and saw Plaintiff, he began to attack Plaintiff with a "shiv (an improvised stabbing tool)." [Doc. #1, p.5]

Plaintiff alleges that the attack was broken-up by another inmate, Royal Cassells, who then escorted Plaintiff to the countroom/command post to seek medical treatment. Plaintiff was taken to the segregation housing area where he was examined by medical personnel and then transported to the emergency room of the local hospital for further care. Plaintiff suffered stab wounds, pain, and permanent scarring as a result of his injuries.

Plaintiff filed an administrative grievance, and a disciplinary review was conducted in response. The disciplinary report stated that Officer Anderson actually witnessed the attack, called a code via radio, and that Assistant Prince responded and assisted Anderson in breaking up the altercation. [Doc. #1, p.5] Plaintiff maintains that this report is false and that another inmate actually broke up the fight and helped Plaintiff obtain

medical care. Plaintiff points out that, had an officer actually ended the assault, the weapon would have been recovered. He also notes that, had an officer ended the attack, Inmate Mitchell would have been placed in the SHU immediately as opposed to well after the incident, from a location other than the site of the assault. [Doc. #1, p.25] Plaintiff was not convicted of a disciplinary violation since he was the victim of the attack.

Plaintiff argues that WNC is understaffed and/or employees are improperly trained. He bases this claim on the fact that the fight was undetected by WNC despite being in plain view of security cameras; the fight was broken up by another inmate and unnoticed by WNC officers; and, after the attack, Plaintiff was escorted by another inmate a distance of three hundred feet with stab wounds without being seen by any officer or employee of WNC. Moreover, he claims that the defendants should have detected the weapon during routine "shake downs."

Plaintiff's grievance was denied at the second step on March 1, 2013. [Doc. #1, p.29] On or about June 27, 2013, Plaintiff sought review in the 19th Judicial District Court. [Doc. #1, p.9-13] On August 2, 2013, the Commissioner of the 19th Judicial District Court made a recommendation that Landers's appeal be dismissed without prejudice because the claim was filed "in the improper mode for trial and in the wrong venue." [Doc. #1, p.32-33] The commissioner's recommendation was adopted by the district

judge on September 30, 2013, and a copy was mailed to Plaintiff on October 2, 2013. Plaintiff's complaint before this Court was signed on March 27, 2014. [Doc. #1, p.4]

***Law and Analysis***

**1. Failure to Protect**

Plaintiff names as defendants James LeBlanc, Virgil Lucas, Capt. Maxwell, Officer Henry, Officer Anderson, and Warden Tim Keith. He does not state how each named defendant is liable for failing to protect Lathers from harm inflicted by inmate Mitchell. He claims that the disciplinary report and grievance response forms all falsely state that Anderson and Prince broke up the fight.

Prison officials have a duty, under the Eighth Amendment, to protect prisoners from violence at the hands of other prisoners. Farmer v. Brennan, 511 U.S. 825 (1994); Johnston v. Lucas, 786 F.2d 1254, 1259 (5th Cir. 1986). However, the Eighth Amendment mandates 'reasonable' safety, not 'absolute' safety. See Newton v. Black, 133 F.3d 301, 307 (5th Cir. 1998). A prison official can only be held liable if he *deliberately* ignored a *clear danger* to a prisoner *after* the official had been made aware of the danger. See Farmer, 114 S.Ct. at 837. An official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment. See Farmer, 511 U.S. at 837. Therefore, to establish an Eighth Amendment "failure to protect" violation, the

inmate must show that the prison official acted or failed to act *despite his knowledge of a substantial risk of serious harm.* Farmer, 511 U.S. at 841.

Plaintiff was ordered to amend his complaint to state whether he expressed any concern about his safety or well-being to any of the defendants or other officials at WNC either in general, or specifically with regard to inmate Mitchell. He was instructed to state whether any of the defendants knew of any risk to his safety or health and whether any of the defendants acted with deliberate indifference in failing to protect him from harm. Plaintiff submitted an amended complaint on October 31, 2014. In amending his complaint, Plaintiff made no allegations that he ever informed the defendants about his prior encounter with Mitchell or that he felt threatened in any way by another inmate. Plaintiff does not allege that any of the defendants were aware that Inmate Mitchell posed a substantial risk of serious harm to Plaintiff. Plaintiff admittedly had an argument with Mitchell on the day of the attack. Yet, he failed to advise any of the defendants that he was in danger or threatened in any way. Later that evening, Mitchell threatened Plaintiff again. Once again, Plaintiff failed to inform any of the defendants. Also, despite the threats, Plaintiff proceeded to leave his housing unit and "waited outside the doors for inmate Mitchell to pass." [Doc. #1, p.5]

As Plaintiff was informed, an official must both be aware of

facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. "Prisons are necessarily dangerous places; they house society's most antisocial and violent people in close proximity with one another. Regrettably, '[s]ome level of brutality and sexual aggression among [prisoners] is inevitable no matter what the guards do ... unless all prisoners are locked in their cells 24 hours a day and sedated." See Farmer 511 U.S. 858-9, J. Thomas, *concurring*; citing McGill v. Duckworth, 944 F.2d 344, 348 (CA7 1991). Clearly Plaintiff failed to inform the defendants of any risk to his safety. Even if the defendants should have been aware of the risk, despite Plaintiff's failure to inform them, the Fifth Circuit has declined to find deliberate indifference when an official should have inferred the risk posed to an inmate. Instead, the official must actually draw such an inference. See Adames v. Perez, 331 F.3d 508, 514 (5th Cir. 2003). An official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot be condemned as the infliction of punishment. See Farmer, 511 U.S. at 837. Plaintiff has failed to alleged deliberate indifference on the part of any defendant.

Plaintiff makes only general and conclusory allegations of conspiracy and wrongdoing. For example, Plaintiff alleges that the defendants "conspired with other named defendants or possessed

knowledge in acquiescence to defraud the Court by falsifying documents concerning the actual facts of the assault...." [Doc. #20, p.9] He concludes that several defendants "failed to ensure that each security post was manned by a properly trained staff member, thusly [sic], failing in his duty to protect plaintiff from an obvious substantial risk of danger." [Doc. #20, p.10] He also concludes that the defendants' "failure to perform the duties of his office serve to deprive plaintiff of a reasonably safe environment conducive to the rehabilitative process...." [Doc. #20, p.10] Based on the forgoing, Plaintiff has not stated a claim under the Eighth Amendment.

**2. Understaffing**

Plaintiff alleges that WNC is understaffed, which is why Mitchell's homemade weapon was never discovered, why no employee allegedly saw Mitchell attack Plaintiff, and why no employee was around to end the attack or seek medical attention for Plaintiff. Knowledge of prison understaffing and a decision not to increase the number of guards on duty may amount to deliberate indifference to the safety and well-being of the inmates, in violation of the Eighth Amendment. See Edwards v. Gilbert, 867 F.2d 1271 (11th Cir. 1989); Anderson v. City of Atlanta, 778 F.2d 678, 685 (11th Cir. 1985). Plaintiff was instructed that, to state a claim for inadequate staffing, he would have to allege that there was a policy at Winn Correctional, promulgated or implemented by Warden

Keith and/or CCA, of deliberate indifference to the risk of understaffing and that this policy caused his injury. See Greason v. Kemp, 891 F.2d 829, 838 (11th Cir. 1990); Westmoreland v. Brown, 883 F.Supp. 67, 76 (W.D.Va. 1995). *Evidence of understaffing, without more, is not proof of official policy.* See Hood v. Itawamba, 819 F.Supp. 556, 566 (N.D.Miss. 1993); Gagne v. City of Galveston, 671 F.Supp. 1130, 1135 (S.D.Tex. 1987), *aff'd*, 851 F.2d 359 (5th Cir. 1988). Plaintiff's conclusion that the employment of additional staff members would have somehow prevented the attack by Mitchell, when Plaintiff did not inform any staff member that Mitchell posed a threat to him, is entirely conclusory.

**3. Failure to Train**

In his amended complaint [Doc. #20], Plaintiff claims that the supervisory defendants failed to properly train their subordinates. "Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." Thompson v. Upshur Cnty., 245 F.3d 447, 459 (5th Cir. 2001) (citation omitted). To establish Section 1983 supervisory liability, Plaintiff must show that (1) the supervisor failed to supervise or train the officers; (2) a causal connection existed between the failure to supervise or train and the violation of the plaintiff's rights; and (3) the failure to supervise or train amounted to deliberate indifference to the plaintiff's constitutional rights. See Roberts v. City of Shreveport, 397 F.3d

287, 292 (5th Cir. 2005). Plaintiff has only made a general conclusory allegation that the defendant officers were not properly trained. The fact remains that Plaintiff, despite having an encounter and argument with Mitchell earlier in the day, did not inform the officers of any impending threat of harm. Plaintiff has not presented a non-conclusory allegation of how the attack was caused by a lack of training.

***Conclusion***

For the foregoing reasons, **IT IS RECOMMENDED** that Plaintiff's complaint be **DENIED** and **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. §1915(e)(2)(B) and 1915A.

***Objections***

**Under the provisions of 28 U.S.C. §636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs or responses (such as supplemental objections, reply briefs etc.) may be filed. Providing a courtesy copy of the objection to the magistrate judge is neither required nor encouraged. Timely objections will be considered by the district judge before he makes his final ruling.**

FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS,

CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT UPON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE TO WHICH THE PARTY DID NOT OBJECT.

THUS DONE AND SIGNED at Alexandria, Louisiana, this 19th day of November, 2014.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE